**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| LODSYS GROUP, LLC, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 2:13-cv-255 |
| TMSOFT, LLC, | |
| Defendant, | |
| v. | |
| APPLE INC., | |
| Intervenor and Counter-Claimant | |

**DEFENDANT TMSOFT, LLC'S MOTION TO DISMISS
UNDER THE TEXAS CITIZENS PARTICIPATION ACT
AND FOR  LACK OF PERSONAL JURISDICTION**

Daniel B. Ravicher
PUBLIC PATENT FOUNDATION
Benjamin N. Cardozo School of Law
55 Fifth Avenue, Suite 901
New York, NY 10003
Tel: (646) 470-2641
Fax: (212) 591-6038
Email: ravicher@pubpat.org

*Counsel for Defendant TMSOFT, LLC.*

## TABLE OF CONTENTS

Page

I.      INTRODUCTION.....................................................................................................1

II.     STATEMENT OF THE ISSUES.............................................................................1

III.    FACTUAL BACKGROUND....................................................................................2

        A.      Lodsys' Patent Assertion Campaign..............................................................2

        B.      TMSOFT's Todd Moore Publicly Criticizes Lodsys.................................3

        C.      Lodsys' Counsel Admits This Suit Was Motivated By Moore's Speech.................5

        D.      TMSOFT's Lack Of Contacts With Texas.............................................6

IV.     ARGUMENT..............................................................................................................7

        A.      This Action Should Be Dismissed Under The CPA.................................7

        B.      The Court Does Not Have Personal Jurisdiction Over TMSOFT........................11

V.      CONCLUSION.........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## CONSTITUTION

Article VI, Section 2........................................................................................................10

## CASES

*Acceleron, LLC v. Egenera, Inc.*,
  634 F. Supp. 2d 758 (E.D. Tex. 2009)..............................................................13

*AFTG-TG, LLC v. Nuvoton Technology Corp.*,
  689 F. 3d 1358 (Fed. Cir. 2012)...................................................................14, 15

*Avocent Hunstvile Corp. v. Aten Int'l Co.*,
  552 F.3d 1324 (Fed. Cir. 2008)..............................................................11, 12, 15

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)........................................................................................12

*C Constr. Co. v. City of Jacksonville*,
  2007 U.S. Dist. LEXIS 51973 (E.D. Tex. July 18, 2007)..................................13

*Farmer Boys' Catfish Kitchens Int'l, Inc. v. Golden W. Wholesale Meats, Inc.*,
  18 F. Supp. 2d 656 (E.D. Tex. 1998)................................................................13

*Gade v. National Solid Wastes Mgmt. Ass'n*,
  505 U.S. 88 (1992)..........................................................................................11

*Godin v. Schencks*,
  629 F.3d 79 (1st Cir. 2010).........................................................................10, 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  131 S. Ct. 2846 (2011)....................................................................................14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984)........................................................................................12

*Henry v. Lake Charles American Press*,
   566 F.3d 164 (5th Cir. 2009)..................................................................................10, 11

*Hillsborough Cnty., Fla. v. Auto. Med. Labs., Inc.*,
   471 U.S. 707 (1985)................................................................................................10

*J. McIntyre Mach. Ltd. v. Nicastro*,
   131 S. Ct. 2780 (2011)........................................................................................13, 15

*Johnston v. Multidata Sys. Int'l Corp.*,
   523 F.3d 602 (5th Cir. 2008)................................................................................12, 14

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984)................................................................................................15

*Kudu Co. v. Latimer*,
   2011 U.S. Dist. LEXIS 94940 (E.D. Tex. Aug. 1, 2011)................................................13

*Lodsys, LLC v. Adidas America, Inc. et al,,*
   2:11-cv-00283-JRG...................................................................................................2

*Lodsys, LLC v. Brother International Corp et al.*,
   2:11-cv-00090-JRG...................................................................................................2

*Lodsys, LLC v. Combay, Inc. et al,,*
   2:11-cv-00272-JRG...................................................................................................2

*NCDR LLC v. Mauze & Bagby, PLLC*,
   L-12-36 (S.D.Tx. Oct. 5, 2012)...............................................................................10

*Revell v. Lidov*,
   317 F.3d 467 (5th Cir. 2002)....................................................................................12

*United States ex rel Newsham v. Lockheed Missiles & Space Co.*,
   190 F.3d 963 (9th Cir. 1999)...............................................................................10, 11

*Ward v. Rhode*,
   2012 U.S. Dist. LEXIS 139359 (E.D. Tex. Sept. 7, 2012).........................................14, 15

iii

*Williamson v. Mazda Motor of Am., Inc.*,
   131 S.Ct. 1131 (2011)................................................................................................10

**STATUTES**

Texas Citizens Participation Act
   Tex. Civ. Prac. & Rem. Code § 27.001, et. seq. .......................................................*passim*

Texas H.B. No 2935 (effective June 14, 2013)........................................................................7, 9

**OTHER**

Florian Mueller, *Lodsys Update: More Letters To Android App Devs, First Known Letter To
   BlackBerry App Dev, Upcoming EFF Boot Camp*, FOSS Patents, August 28, 2011..........3

Laura Lee Prather, *A Primer on the Texas Anti-SLAPP Statute*,
   Slapp'ed In Texas.com...............................................................................................7

*Licensing Momentum*,
   Lodsys Group LLC, October 8, 2012..................................................................3

*Patent Troll Shakes Down iPhone App Programmers*,
   ArsTechnica, May 13, 2011................................................................................3

Defendant TMSOFT, LLC, ("TMSOFT") respectfully moves the Court to dismiss Plaintiff Lodsys Group, LLC's ("Lodsys") Complaint under the Texas Citizens Participation Act ("CPA") and for lack of personal jurisdiction. TMSOFT also moves under the CPA an award of its costs, attorneys fees and expenses, and for sanctions.

## I.      INTRODUCTION

TMSOFT is just one of many defendants Lodsys has sued for patent infringement in this Court, but TMSOFT is different from the others in one significant way: Lodsys brought this suit as retaliation against TMSOFT's owner, Todd Moore, for publicly criticizing Lodsys. Such a retaliatory motive violates the Texas Citizens Participation Act ("CPA"), which directs dismissal of a case brought in response to a party's exercise of free speech. Accordingly, the Court should dismiss the Complaint, award TMSOFT its costs, attorneys fees, and expenses, and order sanctions against Lodsys.

Lodsys' Complaint also merits dismissal for lack of personal jurisdiction. TMSOFT is a small company located in northern Virginia that provides applications and related electronic media files for mobile devices to third party distributors who offer them to their users. TMSOFT has no office in Texas and does not direct any activities or advertising at Texas. TMSOFT does not directly sell its apps and related electronic media files. Simply putting them into the "stream of commerce" is insufficient for Lodsys to carry its burden to show that due process is satisfied.

## II.     STATEMENT OF THE ISSUES

1.       Whether the Complaint for patent infringement filed by Lodsys to retaliate against

TMSOFT's owner for publicly criticizing Lodsys should be dismissed under the Texas Citizens

Participation Act.

2.      Whether the Court can exercise personal jurisdiction over TMSOFT in this action.

## III.     FACTUAL BACKGROUND

Since 2011, Lodsys has threatened to sue, and actually sued, dozens of companies for

infringement of its patents related to interacting with customers over the internet in relationship

to products and services. Concerned that such aggressive patent assertion is harmful to society,

TMSOFT's founder and owner, Todd Moore (the "TM" in TMSOFT), an outspoken

commentator on technology policy issues, criticized Lodsys on his podcast and blog. In response,

Lodsys sent TMSOFT a letter accusing TMSOFT of using its patents and then filed this patent

infringement action. Counsel for Lodsys even admitted to counsel for TMSOFT that this suit was

motivated by a desire to retaliate against Moore for his public criticism.

In addition, Lodsys filed this action in Texas despite the fact that TMSOFT is a small

business located in Virginia that has no offices in, does no business in, and does not purposefully

direct any activities at Texas.

### A.      Lodsys' Patent Assertion Campaign

In the spring of 2011, Lodsys began a significant patent assertion campaign. See, e.g.,

*Lodsys, LLC v. Brother International Corp et* al., 2:11-cv-00090-JRG (E.D. Tex.) (filed February

11, 2011) (12 defendants); *Lodsys, LLC v. Combay, Inc. et al*, 2:11-cv-00272-JRG (E.D. Tex.)

(filed May 31, 2011) (11 defendants); *Lodsys, LLC v. Adidas America, Inc. et al*, 2:11-cv-00283-

2

JRG (E.D. Tex.) (filed June 20, 2011) (10 defendants). To date, Lodsys has filed over 50 patent infringement suits in this Court, including 37 in just the first half of 2013 alone.

Lodsys' patent assertion goes beyond the courts, as it also sends threatening letters to those it believes are infringing its patents. Brian Chen, *Patent Troll Shakes Down iPhone App Programmers*, ArsTechnica, May 13, 2011, available at http://arstechnica.com/apple/2011/05/patent-troll-shakes-down-iphone-app-programmers/; Florian Mueller, *Lodsys Update: More Letters To Android App Devs, First Known Letter To BlackBerry App Dev, Upcoming EFF Boot Camp*, FOSS Patents, August 28, 2011, available at http://www.fosspatents.com/2011/08/lodsys-update-more-letters-to-android.html.

Indeed, Lodsys boasted on its own webpage that, "As of October 8, 2012, there are greater than 150 companies which obtained the rights to use the Lodsys Group patent portfolio, and more than 4 out of 5 of these companies have entered into licenses outside of the litigation process." *Licensing Momentum*, Lodsys Group LLC, October 8, 2012, available at http://www.lodsys.com/1/post/2012/10/-licensing-momentum.html.

## B.    TMSOFT's Todd Moore Publicly Criticizes Lodsys

TMSOFT's founder and owner, Todd Moore, is not only a highly talented computer programmer, and published author; he is also an outspoken activist who expresses strong opinions about matters of public policy relating to technology. D. Moore, ¶¶ 2, 17, 20.[1] In the past, Moore co-hosted a radio show in Washington D.C. called the "Tech 411 Radio Show"

---

1  The nomenclature D. [NAME] refers to a declaration by that individual submitted herewith.

3

addressing issues relating to technology, including specifically legal issues impacting technological development. D. Moore, ¶ 17. The radio show transitioned into the "Tech 411 Show" podcast in May 2011 and has, at times, been the number one top technology podcast available through Apple's iTunes. D. Moore, ¶ 18. Moore also authors a blog in which he discusses issues similar to those discussed on the Tech 411 Show. D. Moore, ¶ 16.

Moore has a strong public policy opposition to companies that make patent infringement allegations against individuals and small businesses who are unable to cover the costs associated with a patent infringement defense. D. Moore, ¶ 20. The May 26, 2011, episode of Moore's Tech 411 Show discussed Lodsys' threatening of mobile device application developers. D. Moore, ¶ 21. During that episode, Moore said that Lodsys was "patent trolling" with "evil letters" that were "complete b.s." D. Moore, ¶ 21 (referencing Tech 411 Show 1, available at http://tech411.libsyn.com/webpage/2011/05). Moore specifically identified as an example a twelve person company that received a threatening letter from Lodsys. D. Moore, ¶ 21.

The following week, on June 2, 2011, Moore again criticized Lodsys on his Tech 411 Show. D. Moore, ¶ 22 (referencing Tech 411 Show 2, available at http://tech411.libsyn.com/webpage/2011/06). During that episode, Moore called Lodsys a "patent troll" and said regarding Lodsys' patent assertion tactics, "it makes me sick" and "it just makes me so mad." D. Moore, ¶ 22. After noting that he had not received a letter from Lodsys, Moore continued to decry Lodsys and its actions, saying "it's ridiculous", "stifles innovation", "shame on them," and "the more we get the news out about this company the better shot we have

4

of bringing attention to it and getting them to stop." D. Moore, ¶ 22.

Then, on June 23, 2011, Lodsys sent Moore's company, TMSOFT, a patent infringement letter exactly like those it had sent others that Moore had so heavily criticized. D. Moore, ¶ 23. (referencing June 23, 2011 Letter from Lodsys to TMSOFT, attached as Exhibit A-1 thereto). On his July 1, 2011, Tech 411 Show, Moore disclosed that, "Now I have a little more skin in the game," because "I just received one of the infamous Lodsys letters against my own application called White Noise." D. Moore, ¶ 24 (referencing Tech 411 Show 5, available at http://tech411.libsyn.com/webpage/2011/07). Later during that episode, Moore interviewed a registered patent attorney who had reviewed the Lodsys matters and determined, in his opinion, that the Lodsys patents were invalid. D. Moore, ¶ 24.

Moore's criticism of Lodsys did not end with his repeated Tech 411 Show discussions, but also continued onto his blog, where on August 1, 2011, he wrote:

> Patent trolls have been all over the press lately with companies like Lodsys suing Rovio Mobile, the maker of Angry Birds.  They also have been going after small iOS and Android developers too.  They are claiming they own the rights to in-app-purchase, upgrade buttons, and even links to the App Store. It kind of feels like a new form of the Mafia.

D. Moore, ¶ 25  (referencing Todd Moore, *Patent Trolls: The End of Innovation as We Know It*, August 1, 2011, available at http://toddmoore.com/2011/08/01/patent-trolls-the-end-of-innovation-as-we-know-it/).

### C.    Lodsys' Counsel Admits This Suit Was Motivated By Moore's Speech

After the Complaint in this matter was served on TMSOFT, counsel for TMSOFT and

Lodsys had some telephone conversations. During the first conversation about the matter, on May 14, 2013, counsel for Lodsys, Christopher Huck, admitted to counsel for TMSOFT, Daniel Ravicher, that this suit was motivated by Moore's public criticism of Lodsys, and particularly Moore's calling Lodsys a "patent troll." D. Ravicher, ¶ 3. During that May 14 conversation, Huck said Moore did not respond to Lodsys' June 23, 2011, letter in "a reasonable way" but instead "crossed the line" by publishing "some blog posting" about Lodsys being a patent troll. D. Ravicher, ¶ 3.

Two days after that conversation, Ravicher sent Huck an email asking him to identify the specific public statements made by Moore that upset Lodsys. D. Ravicher, ¶ 4 (referencing email from Ravicher to Huck dated May 16, 2013, attached as Exhibit B-1 thereto). Neither Huck nor any another Lodsys attorney ever responded to Ravicher's request.

### D.    TMSOFT's Lack Of Contacts With Texas

TMSOFT is a Virginia limited liability company with its principal place of business in Arlington, Virginia. D. Moore, ¶ 6. TMSOFT has never maintained a place of business, facility or office, telephone listings or mailing addresses in Texas. D. Moore, ¶ 7. It has never owned real property or purchased or leased property within the State of Texas. D. Moore, ¶ 8.

TMSOFT's business is providing apps and related electronic media files to online stores such as Apple iTunes, Google Play Store, BlackBerry App World, Amazon Appstore, TuneCore, and others for them to make available to users of their products and services. D. Moore, ¶ 9. TMSOFT does not make any direct sales of its mobile apps and related electronic media files.

6

D. Moore, ¶ 10. TMSOFT has not advertised in any way that is directed specifically toward residents in Texas. D. Moore, ¶ 12. TMSOFT's website is located at http://www.tmsoft.com/. D. Moore, ¶ 13. One cannot purchase TMSOFT's mobile apps and related electronic media files through TMSOFT's website. D. Moore, ¶ 14.

## IV.   ARGUMENT

### A.   This Action Should Be Dismissed Under The CPA

The Texas Citizens Protection Act ("CPA") was passed by a unanimous vote of the Texas legislature in 2011 and immediately signed into law by Governor Rick Perry. Laura Lee Prather, *A Primer on the Texas Anti-SLAPP Statute*, available at http://slappedintexas.com/primer/ ("First Amendment lawyer, Laura Lee Prather, is a partner at Haynes & Boone and formed and spearheaded the coalition that worked for and obtained passage of HB 2793/SB 1565 (the Texas Anti-SLAPP statute)."). The purpose of the CPA is to, "encourage and safeguard the constitutional rights of persons to [] speak freely." Tex. Civ. Prac. & Rem. Code § 27.002. The CPA, "shall be construed liberally to effectuate its purpose and intent fully." Tex. Civ. Prac. & Rem. Code § 27.011(b).

Under the CPA, a party that believes it has been sued in Texas because of its exercise of free speech may bring a motion to dismiss. Tex. Civ. Prac. & Rem. Code § 27.003(a). The Court is to hold a hearing within 60 days of the filing of such a motion and issue a ruling within 30 days of the hearing. Tex. Civ. Prac. & Rem. Code §§ 27.004 (as amended by recent enactment of Texas H.B. No 2935 which became law on June 14, 2013), 27.005(a). "[A] court shall dismiss a

legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action [] is in response to the party's exercise of [] the right of free speech." Tex. Civ. Prac. & Rem. Code § 27.005(b). In addition, "at the request of a party making a motion under Section 27.003, the court shall issue findings regarding whether the legal action was brought to deter or prevent the moving party from exercising constitutional rights and is brought for an improper purpose, including to harass or to cause unnecessary delay or to increase the cost of litigation." Tex. Civ. Prac. & Rem. Code § 27.007(a).

TMSOFT moves to dismiss this action under CPA Section 27.003 because it was brought in response to Moore's exercise of free speech. TMSOFT also requests that the Court make the findings described in Section 27.007(a). TMSOFT relies on the existing record in this case and the declarations submitted herewith to support its motion. Tex. Civ. Prac. & Rem. Code § 27.006(a). Specifically, as discussed above, the facts plainly show that TMSOFT was sued by Lodsys in response to Todd Moore's public criticism of Lodsys. Counsel for Lodsys has admitted as much. Thus, TMSOFT has proven by a preponderance of the evidence that this case was in response to Moore's exercise of free speech.

TMSOFT recognizes that, under CPA Section 27.005(c), "[t]he court may not dismiss a legal action [] if the party bringing the legal action establishes by _clear and specific evidence_ a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code § 27.005(c) (emphasis added). Lodsys' bare-bones template Complaint fails to satisfy this requirement, however, as it makes only very general infringement allegations without any "clear

and specific" evidence supporting those claims. Lodsys' June 23, 2011, letter accusing TMSOFT

of infringement is similarly unclear and unspecific in that it merely shows images of a TMSOFT

application displayed next to select fragments of claim language with no explanation of how

infringement occurs. D. Moore, Exhibit A-1. To overcome TMSOFT's showing that this case

was motivated by Moore's speech, the burden is on Lodsys to make a "clear and specific"

showing that TMSOFT has infringed its patents, and it has not done so.

Further, a recently enacted amendment to Section 27.005 of the CPA adds new

subsection (d), which states:

> (d) Notwithstanding the provisions of Subsection (c), the court shall dismiss a
> legal action against the moving party if the moving party establishes by a
> preponderance of the evidence each essential element of a valid defense to the
> nonmovant's claim.

Texas H.B. No 2935 (effective June 14, 2013). Thus, even if Lodsys "establishes by clear and

specific evidence a prima facie case for each essential element" of its claim against TMSOFT as

required by 27.005(c), TMSOFT is prepared to establish by "a preponderance of the evidence

each essential element of a valid defense to" Lodsys' claim as per the newly enacted 27.005(d),

which would still compel a dismissal of the Complaint. TMSOFT can not establish defenses until

Lodsys first meets its burden of establishing its claims. If and when Lodsys does so, TMSOFT

will then establish its defenses.

Upon granting TMSOFT's motion to dismiss under the CPA, the Court is to award

TMSOFT, "(1) court costs, reasonable attorney's fees, and other expenses incurred in defending

against the legal action as justice and equity may require; and (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code § 27.009(a). TMSOFT will submit an accounting of its costs, attorneys fees, and other expenses to be awarded by the Court after its CPA motion is granted.

Anti-SLAPP statutes like the CPA are routinely applied in federal court. *Henry v. Lake Charles American Press*, 566 F.3d 164 (5th Cir. 2009) (applying Louisiana's anti-SLAPP statue in federal court); *Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010) (applying Maine's anti-SLAPP statute in federal court); *United States ex rel Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999) (applying California's anti-SLAPP statute in federal court).

While a sister district court held that the Supremacy Clause forbids application of the CPA to federal claims, that decision is contrary to the law, and currently on appeal to the 5th Circuit. *NCDR LLC v. Mauze & Bagby, PLLC*, L-12-36 (S.D.Tx. Oct. 5, 2012). The CPA can apply to the federal claims in this case because the CPA neither interferes with nor is contrary to any applicable federal law. *Hillsborough Cnty., Fla. v. Auto. Med. Labs., Inc.*, 471 U.S. 707, 712 (1985) ("It is a familiar and well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that interfere with or are contrary to federal law") (internal quotations omitted); *see also Williamson v. Mazda Motor of Am., Inc.*, 131 S.Ct. 1131 (2011).

The CPA has a built-in safety valve to prevent any conflict with any federal law on which a complaint is based, because by its letter, dismissal is *only* appropriate if the plaintiff *fails* to

establish a claim or the defendant fails to establish a defense. Tex. Civ. Prac. & Rem. Code § 27.005(c) and (d). Thus, if Lodsys has a valid claim and TMSOFT does not have a valid defense, the CPA itself says the Complaint should not be dismissed. In this way, the CPA does not prevent meritorious federal claims, including the claims for patent infringement in this case, from proceeding.

TMSOFT's motion to dismiss under the CPA will also not interfere with the procedures set forth in the Federal Rules of Civil Procedure, as anti-SLAPP statutes have been applied in several federal cases without conflict before. *See, e.g., Henry*, 566 F.3d 164; *Godin*, 629 F.3d 79; and, *United States ex rel Newsham*, 190 F.3d 963. Thus, the CPA, the FRCP and the Patent Act can all be followed in this case without conflict or intereference. *Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992). This result respects the rights of states to pass laws to protect the Constitutional rights of their citizens, as Texas has done with the CPA.

With respect to a hearing date for its motion, TMSOFT's counsel is a law professor at Benjamin N. Cardozo School of Law and has academic commitments already scheduled, some of which include international travel, from July 5-19 and August 2-9. Other than those dates, counsel for TMSOFT is available for a hearing on the CPA motion at the Court's convenience.

**B.      The Court Does Not Have Personal Jurisdiction Over TMSOFT**

Federal Circuit law controls personal jurisdiction in patent cases. *See Avocent Hunstvile Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008). To establish personal jurisdiction over an out-of-state defendant, the plaintiff must show: (1) that the forum state's long-arm statute

applies; and (2) that the due process requirements are satisfied. *See Id.* at 1329. "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "Federal due process requires a plaintiff to prove: (1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Id.*

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Id.* To establish general jurisdiction, a plaintiff must demonstrate that the defendant maintained "continuous and systematic" contacts with the forum state. *Avocent Hunstvile*, 552 F.3d at 1330 (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984)). "To establish specific jurisdiction, a plaintiff must demonstrate that the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (internal citations and quotation marks omitted) (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)). In other words, for specific jurisdiction, the court looks only to the "contact out of which the cause of action arises." *Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir. 2002).

"Once a movant challenges a court's jurisdiction over him, the party asserting jurisdiction bears the burden to show the movant has minimum contacts with the forum state to support

12

jurisdiction over the movant." *Acceleron, LLC v. Egenera, Inc.*, 634 F. Supp. 2d 758, 769 (E.D. Tex. 2009). When considering a motion to dismiss, the court must accept as true the plaintiff's non-conclusory, uncontroverted allegations and resolve all factual disputes in favor of the plaintiff. *C Constr. Co. v. City of Jacksonville*, No. 6:06-cv-313, 2007 U.S. Dist. LEXIS 51973, at *3–4 (E.D. Tex. July 18, 2007). "However, the Court is not required to credit conclusory allegations, even if uncontroverted." *Kudu Co. v. Latimer*, No. 4:10-cv-680, 2011 U.S. Dist. LEXIS 94940, at *8 (E.D. Tex. Aug. 1, 2011). Therefore, "[p]laintiff must make more of a showing of minimum contacts than merely making conclusory statements that jurisdiction exists." *Farmer Boys' Catfish Kitchens Int'l, Inc. v. Golden W. Wholesale Meats, Inc.*, 18 F. Supp. 2d 656, 661–662 (E.D. Tex. 1998).

Of note, a plurality of the Supreme Court recently stated that, "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Mach. Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (Kennedy, J. announcing the judgment of the Court and delivering an opinion, in which Roberts, C.J., Scalia, J., and Thomas, J.  joined). As Justice Kennedy explained:

> The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.

*Id*. The Chief Judge of the Federal Circuit also recently noted, "the mere recitation of the stream of commerce theory is insufficient for a court's exercise of jurisdiction. This court might reliably

require that 'something more' be present to satisfy personal jurisdiction requirements." *AFTG-TG, LLC v. Nuvoton Technology Corp.*, 689 F. 3d 1358, 1368 (Fed. Cir. 2012) (Rader, C.J. concurring) (*citing McIntyre*). And this Court recently noted that a person's action of placing information on the internet is not sufficient by itself to subject that person to personal jurisdiction in each state in which the information is accessed. *Ward v. Rhode*, 2012 U.S. Dist. LEXIS 139359, at *18 (E.D. Tex. Sept. 7, 2012).

Here, Lodsys makes only conclusory allegations of personal jurisdiction in its Complaint:

> This Court has general and specific personal jurisdiction over defendant, because defendant has substantial contacts with the forum as a result of conducting substantial business in the State of Texas and within this district. Upon information and belief, defendant regularly solicits business in the State of Texas and this district, derives revenue from products and/or services provided to individuals residing the State of Texas and this district; conducts business utilizing the claimed systems and methods with and for customers residing in the State of Texas and this district; and provides and/or markets products and services directly to consumers in this State of Texas and this district.

Complaint, ¶ 4. These bald formulaic allegations woefully fail to carry Lodsys' burden to establish personal jurisdiction over TMSOFT.

With respect to general jurisdiction, "The continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston*, 523 F.3d at 609 (quotation and quotation marks omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853–54 (2011). TMSOFT does not have

14

"continuous and systematic" contacts with Texas. As discussed above, TMSOFT is a Virginia limited liability company with its principal place of business in Arlington, Virginia. D. Moore, ¶ 6. TMSOFT has never maintained a place of business, facility or office, telephone listings or mailing addresses in Texas. D. Moore, ¶ 7. It has never owned real property or purchased or leased property within the State of Texas. D. Moore, ¶ 8. Thus, TMSOFT can not be subject to general jurisdiction in Texas.

With respect to specific jurisdiction, TMSOFT has not purposefully directed any activities at Texas. *Avocent Hunstvile*, 552 F.3d at 1330 (*citing Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). TMSOFT has never sold any of its apps or related electronic media files to persons in Texas, as it does not directly sell them at all. D. Moore, ¶ 10. TMSOFT also does not direct any advertising specifically at Texas. D. Moore, ¶ 12.

Lodsys' only hope is to make a lame "stream of commerce" argument that TMSOFT is subject to personal jurisdiction in Texas, that somehow by providing mobile apps and related electronic media files to online stores such as Apple iTunes, Google Play Store, etc., for them to make available to users of their products and services, TMSOFT deserves being hailed into court in Texas. Yet that is directly contrary to the opinions expressed by Justice Kennedy and three other Supreme Court Justices in *J. McIntyre Mach.* Chief Judge Rader in *AFTG-TG*, and this Court in Ward. 131 S. Ct. at 2787 ("it is not enough that the defendant might have predicted that its goods will reach the forum State"); 689 F. 3d at 1368 ("the mere recitation of the stream of commerce theory is insufficient for a court's exercise of jurisdiction"); 2012 U.S. Dist. LEXIS

15

139359, at *18 (E.D. Tex. Sept. 7, 2012) (finding that a party whose website did not allow consumers to order or purchase goods or services did not subject the party to personal jurisdiction in Texas).

Because Texas has neither general jurisdiction or specific jurisdiction over TMSOFT, Lodsys' Complaint fails to satisfy due process even without getting to the issue of whether forcing TMSOFT to defend itself in Texas would offend 'traditional notions of fair play and substantial justice." *Johnston* , 523 F.3d at 609.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, TMSOFT respectfully requests that the the Court dismiss Lodsys' Complaint under the CPA and for lack of personal jurisdiction. TMSOFT also requests under the CPA that the Court award TMSOFT its costs, attorneys fees and expenses, and issue sanctions against Lodsys.

Dated: July 1, 2013                          Respectfully Submitted,

By:  /s/ Daniel B. Ravicher
Daniel B. Ravicher
PUBLIC PATENT FOUNDATION
Benjamin N. Cardozo School of Law
55 Fifth Avenue, Ste. 901
New York, New York 10003
Tel.: (646) 470-2641
Fax: (212) 591-6038
Email: ravicher@pubpat.org

*Counsel for Defendant TMSOFT, LLC.*

**<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 1st of July, 2013.

                                   /s/ Daniel B. Ravicher

                                  Daniel B. Ravicher

17